IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | 2 CA-CR 2002-0466 |
| | ) | DEPARTMENT A |
| Appellee, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | |
| MATTHEW RUEBEN MONACO, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20003933

Honorable Michael D. Alfred, Judge

AFFIRMED

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and Vincent L. Rabago                          Tucson
                                                        Attorneys for Appellee

Clay Hernandez                                                        Tucson
                                                        Attorney for Appellant

H O W A R D, Judge.

¶1        After a jury trial, appellant Matthew Monaco was convicted of multiple drug offenses and sentenced to six, four-year prison sentences and two, six-month sentences, all to be served concurrently. Monaco contends that his sentences should be reduced because 1) the state engaged in sentence entrapment or manipulation, 2) the undercover officer breached his duty to arrest Monaco after the first sale, and 3) Monaco suffered prejudice from preindictment delay.

Because Arizona courts are not permitted to ignore the statutory range of sentences and the officer's investigative delay did not violate any state statute or Monaco's due process rights, we affirm.

## BACKGROUND AND FACTS

¶2          We view the facts in the light most favorable to upholding the trial court's sentence. *State v. Wideman*, 165 Ariz. 364, 369, 798 P.2d 1373, 1378 (App. 1990).  Over a two-month period, Monaco sold cocaine five times to an undercover police officer.  The first sale he sold one quarter of an ounce; in the second, third, and fourth sales he sold one ounce; and in the final sale he sold two ounces of cocaine.  During that time, the officer was not attempting to obtain information about other drug dealers; he testified he simply was not ready to arrest Monaco.  After the fifth sale, the officer obtained a search warrant for Monaco's residence and found narcotics paraphernalia and marijuana.  Monaco was subsequently convicted of sale of a narcotic drug, four counts of selling a narcotic drug in an amount of nine grams or more; possession of a narcotic drug for sale in the amount of nine grams or more; possession of marijuana; and possession of drug paraphernalia.  The trial court sentenced Monaco to mitigated, four-year prison terms for each count involving the possession or sale of cocaine and to concurrent, six-month terms for the possession of marijuana and drug paraphernalia counts.

## SENTENCE ENTRAPMENT OR MANIPULATION

¶3          Monaco argues the officer conducted multiple undercover purchases of illegal drugs to purposely increase Monaco's prison time.  He contends that, had the officer arrested him after the first purchase, he would be eligible for parole or possibly even probation under A.R.S. § 13-3408(C).  Monaco also contends that, because the officer "purpose[ful]ly manipulate[d his] sentence[s]," the aggregate weight of the sales exceeded the threshold amount under A.R.S. § 13-

2

3401(36), which made Monaco ineligible for "suspension of sentence, probation, pardon, or release from confinement on any basis" until he has fully served his sentences. § 13-3408(D). As a result, Monaco urges us to adopt the federal doctrine of sentence entrapment or sentence factor manipulation and adjust his sentences accordingly. Whether a trial court can use a particular factor in sentencing is a question of law, which we review de novo. *See State v. Tschilar*, 200 Ariz. 427, ¶32, 27 P.3d 331, ¶32 (App. 2001).

¶4 Several federal circuit courts have adopted the doctrines of either "sentence entrapment" or "sentence factor manipulation." "Sentencing entrapment . . . occurs when 'a defendant, although predisposed to commit a minor or lesser offense, is entrapped in[to] committing a greater offense subject to greater punishment.'" *United States v. Staufer*, 38 F.3d 1103, 1106 (9th Cir. 1994), *quoting United States v. Stuart*, 923 F.2d 607, 614 (9th Cir. 1991); *see also United States v. Berg*, 178 F.3d 976, 981 (8th Cir. 1999). Sentence factor manipulation occurs when the government engages in improper conduct that has the effect of increasing a defendant's sentence. *United States v. Lacey*, 86 F.3d 956, 963 n.5 (10th Cir. 1996); *United States v. Connell*, 960 F.2d 191, 194 (1st Cir. 1992). Sentencing entrapment focuses on the defendant's predisposition to commit crimes, and sentencing factor manipulation focuses on the government's conduct. *United States v. Sanchez*, 138 F.3d 1410, 1414 (11th Cir. 1998).

¶5 The sentencing entrapment or manipulation doctrine developed in response to perceived abuses of the restrictive scheme of the federal sentencing guidelines. *Staufer*, 38 F.3d at 1106-07. These guidelines set forth narrow sentencing ranges determined by both the severity of the offense and the defendant's criminal record. These ranges are required by statute to be no more than six months or twenty-five percent of the minimum, unless the minimum exceeds thirty years. 28 U.S.C. § 994(b)(2). And a judge must impose a sentence within that narrow range if

3

the case is "an ordinary one." *Koon v. United States*, 518 U.S. 81, 92, 116 S. Ct. 2035, 2044, 135 L. Ed. 2d 392, 409 (1996). But a judge may depart from the range when the case is atypical and involves aggravating or mitigating circumstances that the United States Sentencing Commission did not adequately consider when it created the guidelines. 18 U.S.C. § 3553(b)(1). Although the commission provides guidance on what factors make a case atypical, *see* United States Sentencing Guidelines (U.S.S.G.) §§ 5H1.1 through 5H1.12; 5K2.0 through 5K2.23, a sentencing court is not constrained to these factors; a court may depart from the guidelines based on any circumstance not considered by the commission so long as the circumstance is consistent with the sentencing factors established by Congress. *Koon*, 518 U.S. at 94-96, 116 S. Ct. at 2045, 135 L. Ed. 2d at 410-11; *United States v. Pacheco-Osuna*, 23 F.3d 269, 271 (9th Cir. 1994).

¶6        The Eighth and Ninth Circuits have held that a court may legally rely upon sentencing entrapment to depart from the sentencing range in the guidelines. *Staufer*, 38 F.3d at 1108; *Berg*, 178 F.3d at 981. The *Staufer* court in particular was concerned that the federal sentencing scheme would not ensure that defendants would be sentenced on the basis of their culpability because of abuse of the sentencing scheme by government agents. *Staufer*, 38 F.3d at 1106-07. The court stated that "courts can ensure that the sentences imposed reflect the defendants' degree of culpability only if they are able to reduce the sentences of defendants who are not predisposed to engage in deals as large as those induced by the government." *Id.* at 1107. The court then found that the commission had considered this public policy concern of sentence entrapment as reflected in the amendment application note to U.S.S.G. § 2D1.1 on reverse sting operations. Thus, the court concluded, allowing a judge to depart from the sentencing range after

4

finding that the government had engaged in sentencing entrapment is consistent with the sentencing factors prescribed by Congress. *Id.*

¶7 Based on the above analysis, the Ninth Circuit has subsequently held that if a defendant proves by a preponderance of the evidence that the law enforcement officer engaged in sentencing entrapment, a district court may reduce the prescribed sentences in one of two ways. *United States v. Riewe*, 165 F.3d 727, 729 (9th Cir. 1999); *United States v. Parrilla*, 114 F.3d 124, 127 (9th Cir. 1997). First, the court may grant a downward departure from the sentencing range under the federal guidelines. *Riewe*, 165 F.3d at 729. Second, the court may apply only the penalty provision for the lesser offense that the defendant was predisposed to commit rather than the offense that the defendant was induced to commit. *Id.* This second option allows the court to circumvent 21 U.S.C. § 841(b), which creates a statutory minimum sentence requirement for drug-related offenses. *See id.*

¶8 Although Arizona's sentencing statutes resemble the federal sentencing scheme by requiring a mandatory minimum sentence for drug-related offenses, Arizona allows for a much broader discretion within its sentencing range. Our legislature established a presumptive sentence for each offense and allows a judge to increase the sentence to a stated maximum or to decrease it to a stated minimum based on aggravating or mitigating factors. For drug-related offenses, Arizona accords a trial court a range in some cases of eight years rather than the six months under the federal guidelines. A.R.S. § 13-3419. And, when determining whether to aggravate or mitigate a sentence, a judge may consider "[a]ny . . . factor that the court deems appropriate to the ends of justice." A.R.S. § 13–702(C)(20) and (D)(5); *see State v. Alvarez*, 205 Ariz. 110, ¶17, 67 P.3d 706, ¶17 (App. 2003). Thus, within the statutory range, a sentencing court has broad discretion to determine an offender's sentence.

5

**¶9** Although judges have discretion within the statutory range of sentences, Arizona's statutory scheme does not allow for departures outside this range. Arizona courts have a duty to impose a sentence authorized by statute and within the limits set by the legislature. *State v. Kinslow*, 165 Ariz. 503, 507, 799 P.2d 844, 848 (1990); *see also State v. Jenson*, 123 Ariz. 72, 74, 597 P.2d 554, 556 (App. 1979) (trial judge has no discretion to substitute own judgment for penalty prescribed by legislature). "'Whether mandatory prison sentences are not appropriate in every situation is a question for the law-making body, not the courts.'" *State v. Jackson*, 186 Ariz. 490, 491, 924 P.2d 494, 495 (App. 1996), *quoting State v. Molina*, 118 Ariz. 250, 251, 575 P.2d 1276, 1277 (App. 1978). Even if a trial court concludes that the mandated sentence is clearly excessive, the court must still impose the sentence but may allow the defendant to petition the governor for commutation of the sentence. *See* A.R.S. § 13-603(L); *Jackson*, 186 Ariz. at 492, 924 P.2d at 496. Only if a sentence is so severe that it is grossly disproportionate to the offense and violates the Eighth Amendment may the courts examine the facts of the case and the circumstances of the offender and reduce the sentence. *State v. Davis*, ___ Ariz. ___, ¶34, 79 P.3d 64, ¶34 (2003).

**¶10** At oral argument, Monaco argued that allowing an officer to continue making drug purchases without "articulable reasons" would violate the legislative intent contained in the drug sentencing statutes, which allow some defendants to receive probation. *See* § 13-3408(C). Monaco analogized this provision to the *Staufer* court finding that U.S.S.G. § 2D1.1 provided legislative intent to allow a district court to depart from the prescribed range if a defendant proved that the government had engaged in sentence entrapment. *See Staufer*, 38 F.3d at 1107. But our legislature also enacted § 13-3408(D), which allows for the aggregation of weights of an illegal narcotic to meet the threshold amount; if this threshold is achieved, then probation is not available.

6

We believe that § 13-3408(D) is the best indication of our legislature's intent regarding multiple sales, thus, the officer's investigative conduct did not violate the legislative intent of the drug sentencing laws.

¶11 As noted above, Arizona courts, including the supreme court, have uniformly held that, absent a constitutional violation, a trial court is required to sentence a defendant within the statutory range. Therefore, we are not at liberty to adopt the doctrine of sentence entrapment or manipulation to allow our trial courts to do otherwise. *See State v. Crowley*, 202 Ariz. 80, ¶30, 41 P.3d 618, ¶30 (App. 2002) (court of appeals bound by supreme court precedent). And, because Arizona's sentencing scheme accords trial courts a greater sentencing range than the federal guidelines provide federal judges, the public policy concerns that advanced the doctrine in the federal courts are less compelling, albeit not insignificant, here.

¶12 Furthermore, when determining whether to mitigate or substantially mitigate the presumptive sentence or whether to impose concurrent or consecutive sentences, our trial courts are allowed to consider any evidence or circumstance that the court deems relevant, including the culpability of the defendant. *See* A.R.S. §§ 13–702(D)(5); 13-702.01; 13-708; *see also Tschilar*, 200 Ariz. 427, ¶18, 27 P.3d 331, ¶18 ("[T]he trial court[ has] discretion to consider various factors related to the offense and the offender when it imposes a sentence within the range of punishment prescribed by the [sentencing] statute."). Thus, although a court may not depart from the established statutory ranges, it has full discretion to sentence a defendant within them based on the evidence presented. Accordingly, the federal sentencing guidelines-based holdings of the federal courts are inapposite in Arizona. Neither our precedent nor statutory scheme requires or permits trial courts to apply the doctrines of sentence entrapment or sentence factor manipulation to sentence a defendant outside the prescribed statutory range.

¶13        Our decision not to apply the doctrines of sentence entrapment or manipulation has substantial support from other jurisdictions.  Other federal circuits have rejected these doctrines. *United States v. Williams*, 954 F.2d 668, 673 (11th Cir. 1992) ("[A]s a matter of law, we reject [the defendant's] sentence entrapment theory."); *United States v. Garcia*, 79 F.3d 74, 76 (7th Cir. 1996) ("We now hold that there is no defense of sentencing manipulation in this circuit.").  And other state courts have found, as we have, that allowing a trial court to depart from the mandatory minimum sentence is either in conflict with or unnecessary under their state's statutory scheme. *See People v. Graves*, 113 Cal. Rptr. 2d 708, 714 (Ct. App. 2001) (no need for specific basis for departure since California courts do not follow the same guidelines as federal courts); *Kelley v. State*, 821 So. 2d 1255, 1257 (Fla. Dist. Ct. App. 2002) (state sentencing statutes do not permit trial judges to avoid minimum mandatory provisions); *Commonwealth v. Garcia*, 659 N.E.2d 741, 745 (Mass. 1996).  Some jurisdictions have also declined to adopt a sentence manipulation defense, relying instead on established standards for outrageous government conduct claims. *United States v. Lacey*, 86 F.3d 956, 963 (10th Cir. 1996) (arguments presented as "sentencing factor manipulation" or otherwise should be analyzed under outrageous conduct standard); *State v. Soto*, 562 N.W.2d 299, 305 (Minn. 1997) (court declined to adopt doctrines of sentencing entrapment and sentencing manipulation in absence of egregious police conduct).

¶14        Monaco also argues that a trial court should have the authority to depart from the mandatory sentence under the Due Process Clause of Arizona's Constitution.  Ariz. Const. art. II, § 4.  But under Arizona law, "investigatory conduct violates a defendant's due process rights only when it approaches 'coercion, violence, or brutality to the person.'" *State v. Walker*, 185 Ariz. 228, 239, 914 P.2d 1320, 1331 (App. 1995), *quoting Irvine v. California*, 347 U.S. 128, 133, 74 S. Ct. 381, 383, 98 L. Ed. 561, 569 (1954).  As the court noted in *Walker*, "[p]recedent

dictates that we refrain from applying the general due process constraint to bar a conviction except in the rare instance of '[p]olice overinvolvement in crime' that reaches 'a demonstrable level of outrageousness.'" *Id.*, *quoting Hampton v. United States*, 425 U.S. 484, 495 n.7, 96 S. Ct. 1646, 1653 n.7, 48 L. Ed. 2d 113, 127 n.7 (1976).

¶15    The officer's investigation of Monaco did not rise to the level of "coercion, violence, or brutality to the person," nor was the conduct "outrageous." *See United States v. Mosley*, 965 F.2d 906, 911 (10th Cir. 1992) (it is not outrageous for government to induce defendant to continue criminal activity). At oral argument, Monaco conceded that the Ninth Circuit in *Staufer* had stopped short of finding any due process violation based on sentence entrapment. Monaco also was unable to cite any other case in which a court construed similar investigative conduct as a violation of a defendant's due process right. Monaco's claim, therefore, does not come within the protection of the Due Process Clause.

## DUTY TO ARREST

¶16    Monaco next argues that the investigating officer breached his duty under A.R.S. § 11-441(A)(2) to arrest Monaco after the first sale of cocaine. Section 11-441(A)(2) provides that a sheriff shall arrest and take before a magistrate for examination all persons who attempt to commit or who have committed a public offense.[1] But the purpose of such a duty is the prompt and orderly administration of criminal justice, *cf. Wilson v. City of Tucson*, 8 Ariz. App. 398, 401-02, 446 P.2d 504, 507-08 (1968); this duty does not create an individual right to be arrested, as Monaco seems to contend. *Cf. Hoffa v. United States*, 385 U.S. 293, 310, 87 S. Ct. 408, 417, 17 L. Ed. 2d 374, 386 (1966) ("There is no constitutional right to be arrested. . . . Law

---

[1]The undercover officer was actually an employee of the City of Tucson, and not the county sheriff's department.

enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction.").

¶17    Imposing an individual right to be arrested in the criminal context based on this statute would significantly impede an officer's ability to conduct any type of undercover operation. The decision of when to arrest a person is not mandated by statute; the government "must be permitted to exercise its own judgment in determining at what point in an investigation enough evidence has been obtained." *United States v. Baker*, 63 F.3d 1478, 1500 (9th Cir. 1995); *see also Donaldson v. City of Seattle*, 831 P.2d 1098, 1103 (Wash. Ct. App. 1992) (when officer has legal grounds to arrest person, officer has considerable discretion to do so); *Wongittilin v. State*, 36 P.3d 678, 681-82 (Alaska 2001) (no duty to arrest when arrest is discretionary). Accordingly, Monaco had no individual right to be arrested after the first narcotics sale.

## PREINDICTMENT DELAY

¶18    Monaco additionally argues that he suffered preindictment delay when the officer failed to arrest him after the first offense. Monaco contends this delay denied him his due process right to have the trial judge sentence him to a term proportional to his offense.

¶19    To establish that preindictment delay has denied a defendant due process, the defendant must show that the prosecution intentionally delayed proceedings to gain a tactical advantage over or to harass the defendant and that the defendant has actually been prejudiced by the delay. *State v. Broughton*, 156 Ariz. 394, 397, 752 P.2d 483, 486 (1988). Monaco argues that the officer, whose actions should be subsumed under the title of the prosecution, intentionally delayed arresting him in order to gain a tactical advantage during plea bargaining or sentencing.

10

¶20      In *United States v. Lovasco*, 431 U.S. 783, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977), the Supreme Court expressly refused to adopt a constitutional requirement that the state file charges immediately upon securing sufficient evidence to prove a person's guilt.  The Court held that a court applying the Due Process Clause to preindictment delay has "to determine only whether the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions' and which define 'the community's sense of fair play and decency.'" *Id.* at 790, 97 S. Ct. at 2049, 52 L. Ed. 2d at 759, *quoting Mooney v. Holohan*, 294 U.S. 103, 112, 55 S. Ct. 340, 342, 79 L. Ed. 791, 794 (1935), and *Rochin v. California*, 342 U.S. 165, 173, 72 S. Ct. 205, 210, 96 L. Ed. 183, 191 (1952).  The Court further noted:  "From the perspective of law enforcement officials, a requirement of immediate prosecution upon probable cause is . . . unacceptable because it could make obtaining proof of guilt beyond a reasonable doubt impossible by causing potentially fruitful sources of information to evaporate before they are fully exploited." *Id.* at 792-93, 97 S. Ct. at 2049-50, 52 L. Ed. 2d at 760.  And *Lovasco* makes clear that an investigative delay is fundamentally unlike delay undertaken by the government solely to gain an improper tactical advantage over an accused; to prosecute a defendant following an investigative delay is not a deprivation of due process. *Id.* at 795-96, 97 S. Ct. at 2051-52, 52 L. Ed. 2d at 762-63; *see also Broughton*, 156 Ariz. at 398, 752 P.2d at 487.

¶21      In this case, the delay between Monaco's first sale to the officer and the day of his arrest was less than two months.  No fundamental concept of justice that defines "the community's sense of fair play and decency" was violated.  Under *Lovasco,* this investigative delay did not deprive Monaco of his right against preindictment delay.  Nor can we conclude that a defendant's being convicted of multiple crimes that he or she has committed is the type of prejudice

11

contemplated by the Due Process Clause. *See, e.g., Garcia*, 79 F.3d at 76 ("[T]he Constitution does not protect a criminal from himself by requiring the government to arrest the criminal before he commits another crime."). Accordingly, we find this argument without merit.

## CONCLUSION

¶22 We hold that Arizona's statutory scheme does not permit us to apply the doctrines of sentence entrapment or sentence manipulation to allow a trial court to sentence a defendant outside the statutory range. And because Monaco did not have an individual right to be arrested after his first sale, and because the investigative delay did not violate Monaco's due process rights, we affirm the sentences imposed by the trial court.

_____
JOSEPH W. HOWARD, Judge

CONCURRING:


_____
J. WILLIAM BRAMMER, JR., Presiding Judge


_____
M. JAN FLÓREZ, Judge

12