(February 13, 1920.)

STATE, Respondent, v. GEORGE MANTIS, Appellant.

[187 Pac. 268.]

CRIMINAL LAW—ENTRAPMENT—EVIDENCE.

1. A person entrapped into the commission of a wrongful act, without any original criminal design upon his part and without any attempt to carry out a criminal purpose of his own conception, does not thereby become guilty of crime.

APPEAL from the District Court of the Fifth Judicial District, for Bannock County. Hon. J. J. Guheen, Judge.

From a conviction of the crime of attempting to induce a female to reside with him for immoral purposes, defendant appeals. *Reversed.*

Oppenheim & Lampert and Jay M. Parrish, for Appellant.

Where one entices another to commit a crime against their own person or property, or where the criminal design originates not with the defendant but with another person, and the defendant was thus enticed into committing the crime, there can be no conviction. (8 R. C. L. 127, sec. 103.)

"There is a very clear distinction between inducing an unlawful act and setting a trap to catch him in the execution of criminal designs of his own conception." (8 R. C. L. 128, sec. 105; *Love v. People,* 160 Ill. 501, 43 N. E. 710, 32 L. R. A. 139; *Wilcox v. People,* 17 Colo. App. 109, 67 Pac. 343; *Walton v. Canon City,* 14 Colo. App. 352, 59 Pac. 840.)

The defendant who is trapped must himself previously have intended the offense into which he is trapped. (*Campbell v. Commonwealth,* 84 Pa. St. 187; *State v. Douglass,* 44 Kan. 618, 26 Pac. 476.)

"Neither mere words and threats nor mere preparations to commit a crime are sufficient to constitute an attempt. It is essential that there should be some overt act which will apparently result in the crime unless interrupted by circumstances independent of the doer's will." (Clark's Criminal Law, 104.)

Roy L. Black, Attorney General, and Clarence S. Hill, Assistant, for Respondent.

Where the appellant was entrapped into the commission of a crime, such entrapment is no defense where it is shown that the criminal intent originated with the appellant and that the appellant, of his own volition, performed every act essential to the complete commission of the crime. (*Strother v. State,* 15 Ala. App. 106, 72 So. 566; *Davis v. State,* 70 Tex. Cr. 524, 158 S. W. 288; *State v. Piscoineri,* 68 W. Va. 76, 69 S. E. 375; *Grimm v. United States,* 156 U. S. 604, 15 Sup. Ct. 470, 39 L. ed. 550, see, also, Rose's U. S. Notes; *People v. Barkdoll,* 36 Cal. App. 25, 171 Pac. 440; *United States v. Healy,* 202 Fed. 349; *Chicago v. Brendecke,* 170 Ill. App. 25; *People v. Moore,* 142 App. Div. 402, 127 N. Y. Supp. 98; *Commonwealth v. Wasson,* 42 Pa. Sup. Ct. 38; *State v. Dougherty,* 86 N. J. L. 525, 93 Atl. 98; *Crowder v. State,* 50 Tex. Cr. 92, 96 S. W. 934; *Hyde v. State,* 131 Tenn. 208, 174 S. W. 1127; *State v. Smith,* 152 N. C. 798, 67 S. E. 508, 30 L. R. A., N. S., 946; *People v. Smith,* 251 Ill. 185, 95 N. E. 1041; *City of Evanston v. Myers,* 172 Ill. 266, 50 N. E. 204.)

Where a crime is committed against the public morals and decency, consent of the victim is no defense. (*Commonwealth v. Wood,* 77 Mass. (11 Gray) 85; *Commonwealth v. Snow,* 116 Mass. 47; *Davis v. State, supra.*)

RICE, J.—Appellant was convicted of the crime of attempting to induce a female to reside with him for immoral purposes. The information alleged that the crime was committed by appellant by giving the female ten dollars in money, intending to induce and for the purpose of inducing her so to reside with him.

The evidence shows that there was no criminal intimacy between appellant and the prosecuting witness. The following excerpts from the testimony of the prosecuting witness is the only evidence in the record that in any way tends to show that appellant gave her money for the purpose of attempting to induce her to reside with him for immoral purposes:

"Q. After you had this conversation with him about the liquor, and about starting from Lima with it, what next happened?

"A. He began to talk about marrying me again.

"Q. What did you tell him?

"A. I told him that I didn't believe in marriage.

"Q. What else did you say?

"A. I told him that I believed in free love.

"Q. What did he say?

"A. He said that suited him all right.

"Q. Where did you get your idea of free love?

"A. You [Prosecuting Attorney] told me.

"Q. What happened after you told him about the free love?

"A. Then we began to talk about how we would live here, and he said that it would be all right as long as we stayed in Pocatello, but he didn't dare to take me into any other state because he could be arrested for white slavery. . . . .

"Q. What was said and what was done with reference to what he gave to you?

"A. Well he gave me $10 to stay with him that night, and bind the bargain that we should live together.

"Q. Were you to be married?

"A. No."

On cross-examination the witness testified as follows:

"Q. Isn't it a fact that you arranged this whole thing with the District Attorney, or County Attorney, and Sheriff, for the purpose of trapping this man that night in that room?

"A. Yes, I did.

"Q. Who told you to say something about the $10; Smith or the Sheriff? . . . .

"A. Mr. Smith [the Prosecuting Attorney].

"Q. And in order to get the $10, you had to say something to George about the $10, didn't you?

"A. I certainly did. . . . .

"Q. What did you say to him about the $10?

"A. I told him that if I was going to live with him I had to have something; I had to have some money.

"Q. You told him that if you were going to live with him you had to have some money?

"A. Yes, sir.

"Q. And that $10, as you say, was to apply on account of staying with him that night?

"A. Yes, sir."

Entrapment into the commission of a crime is not a defense in the sense of a justification or excuse for an act which otherwise would be criminal, but it resolves itself into a question of whether the accused committed any crime. If the criminal design originated with him, or if he intentionally committed or carried out his own criminal purpose, whether it originated with him or not, at the suggestion of another person, the fact that someone other than the accused facilitated the execution of the scheme, or that an officer appeared to co-operate with him, will not be a defense. (*Grimm v. United States*, 156 U. S. 604, 15 Sup. Ct. 470, 39 L. ed. 550, see, also, Rose's U. S. Notes; *People v. Mills*, 178 N. Y. 274, 70 N. E. 786, 67 L. R. A. 131, affirming S. C., 91 App. Div. 331, 86 N. Y. Supp. 529; *People v. Conrad*, 102 App. Div. 566, 92 N. Y. Supp. 606; *State v. Dudoussat*, 47 La. Ann. 977, 17 So.

685.)   It is stated in 8 R. C. L., p. 128, sec. 105, that there is a very clear distinction between inducing a person to do a wrongful act and setting a 'trap to catch him in the execution of criminal designs of his own conception.   We are not here referring to crimes which involve a trespass upon property, such as burglary or larceny, where consent of the owner destroys an essential element of the crime.

In this case there is no evidence that the appellant originated the criminal design of which he was accused and convicted, or that he wilfully and with criminal intent attempted to carry out the crime of which he was convicted after it was suggested to him.   The money was given only after its payment was suggested by the woman, and after she had stated that she preferred to live with appellant for immoral purposes, the appellant merely acquiescing in her suggestions.

The case falls clearly within the rule, and there is no evidence to sustain the verdict.

We deem it unnecessary to discuss the other assignments of error.

The judgment is reversed, and it is ordered that appellant be discharged from custody.

Morgan, C. J., and Budge, J., concur.