# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 50705-2023

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Twin Falls, November 2024 Term |
| | ) | |
| v. | ) | Opinion filed: February 27, 2025 |
| | ) | |
| KELLY D. WEBB, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Blaine County. Ned C. Williamson, District Judge.

The decision of the district court is <u>affirmed</u>.

Law Office of Andrew Parnes, Ketchum, for Appellant. Andrew Parnes argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. Mark W. Olson argued.

---

ZAHN, Justice.

Kelly D. Webb appeals from the district court's decision denying his motion in limine requesting to present the defense of "sentencing entrapment" or "charge entrapment" at trial. He asserts that he was lured by law enforcement into selling a greater quantity of drugs than he otherwise would have. Other courts have permitted the affirmative defense of charge entrapment when a defendant, although predisposed to commit a minor or lesser offense, is entrapped into committing a greater offense subject to greater punishment. To date, Idaho has not adopted the defense.

The district court denied Webb's motion. Webb entered a conditional guilty plea reserving his right to appeal the denial of his motion in limine. Webb timely filed an appeal. He asks us to adopt the charge entrapment defense. For the reasons discussed herein, we decline to do so in this case.

1

# I.   FACTUAL AND PROCEDURAL BACKGROUND

In April 2021, a confidential informant ("CI") working for the Blaine County Sheriff's Office was introduced to Webb through a mutual acquaintance. The Sheriff's Office requested that the CI attempt to purchase contraband from Webb. On April 5, 2021, the CI met with Webb to discuss purchasing methamphetamine. After agreeing to a price, Webb indicated that he could meet with the CI again in two weeks to complete the sale. On April 29, 2021, Webb sold the CI more than 28 grams of methamphetamine. On May 26, 2021, Webb again sold the CI more than 28 grams of methamphetamine.

On June 25, 2021, Webb was indicted by a grand jury for two counts of felony trafficking in methamphetamine in violation of Idaho Code section 37-2732B(a)(4)(A). The Indictment alleged that Webb twice delivered more than 28 grams of methamphetamine to a CI. The offense of trafficking in methamphetamine carries a three-year mandatory minimum sentence, while the lesser included offense of delivery of methamphetamine does not carry a mandatory minimum sentence. *Compare* I.C. § 37-2732B(a)(4)(A), *with* I.C. § 37-2732(a)(1)(A).

Webb pleaded not guilty to both counts. Webb filed a motion in limine requesting that the district court allow him to present the defense of charge entrapment and to instruct the jury on both the charged crime and the lesser offense of delivery of methamphetamine. Webb argued that he should be permitted to pursue a charge entrapment defense because he was entrapped into delivering more than 28 grams of methamphetamine, making him subject to a mandatory minimum sentence of three years. Webb acknowledged that the defense of charge entrapment was not recognized in Idaho but urged the district court to adopt the defense in his case.

The district court held a hearing on the motion but declined to make a ruling and requested more briefing on the matter because it was an issue of first impression in Idaho. In response, the State argued that the trial court is not the appropriate venue for creating new defenses or expanding existing ones, that charge entrapment is not a defense in Idaho and is rarely used in other jurisdictions, and that Webb should be required to first make an initial offer of proof outside the presence of the jury before the district court decided whether to permit the defense. Webb argued to extend Idaho's recognized defense of entrapment to the quantity element of drug trafficking cases, thereby allowing him to argue that, although he was predisposed to sell a lesser amount of methamphetamine and thereby commit a minor or lesser offense, he was entrapped into selling a

larger amount of methamphetamine and thereby committed a greater offense subject to greater punishment.

After holding another hearing on the motion, the district court entered a written order denying the motion. The district court determined that it had authority to recognize charge entrapment as a lawful extension of the common law defense of entrapment. However, the district court declined to recognize the defense after concluding that charge entrapment is a minority position in state and federal jurisdictions and the doctrine was created in response to the Federal Sentencing Guidelines, which are different than Idaho's mandatory minimum sentence laws.

Webb entered a conditional guilty plea reserving his right to appeal the denial of his motion in limine. Webb pleaded guilty to one felony charge of trafficking in methamphetamine, and in exchange, the State agreed to dismiss his second trafficking charge and a felony possession of a controlled substance charge pending in a separate case. The district court sentenced Webb to a unified sentence of 7 years, with 3 years fixed and ordered Webb to pay a $10,000 fine. The 3-year fixed sentence and $10,000 fine are the mandatory minimums set forth in statute for trafficking in methamphetamine. I.C. § 37-2732B(a)(4)(A). Webb timely appealed.

## II.    ISSUE ON APPEAL

Whether the district court erred in denying Webb's motion in limine seeking to present a defense of charge entrapment.

## III.    STANDARD OF REVIEW

"Trial courts have broad discretion when ruling on a motion in limine. Thus, this Court reviews the trial court's decision to grant or deny a motion in limine under an abuse of discretion standard." *State v. Buehler*, 173 Idaho 717, ___, 547 P.3d 1203, 1206–07 (2024) (cleaned up) (quoting *Wilson v. Mocabee*, 167 Idaho 59, 64–65, 467 P.3d 423, 428–29 (2020)). However, whether this Court should recognize an affirmative defense in the first instance is not a discretionary matter, but a question of law. *See State v. Mantis*, 32 Idaho 724, 727–28, 187 P. 268, 268–69 (1920) (applying the entrapment defense for the first time in Idaho); *People v. Stock*, 1 Idaho 218, 226–27 (1868) (applying the defenses of necessity and self-defense for the first time in Idaho). We review questions of law under a de novo standard of review. *Worthington v. Crazy Thunder*, 173 Idaho 336, ___, 541 P.3d 694, 698–99 (2024).

## IV.    ANALYSIS

The Ninth Circuit Court of Appeals describes "sentencing entrapment" as an affirmative defense that is available when "a defendant, although predisposed to commit a minor or lesser

offense, is entrapped in[to] committing a greater offense subject to greater punishment." *United States v. Cortes*, 757 F.3d 850, 860 (9th Cir. 2014) (quoting *United States v. Briggs*, 623 F.3d 724, 729 (9th Cir. 2010)). "Typically, sentencing entrapment occurs when a government agent convinces a drug dealer to purchase or sell more drugs than he is otherwise inclined to deal in." *Briggs*, 623 F.3d at 729.

Preliminarily, we note that "sentencing" entrapment is an inaccurate description of the defense. The Ninth Circuit has recognized that "sentencing entrapment . . . is a separate affirmative defense to the quantity element of [a] drug charge" so " 'sentencing entrapment' is a bit of a misnomer, since the drug quantity is an element of the offense, not a sentencing enhancement or factor." *Cortes*, 757 F.3d at 860–61. In this case, the State echoed this sentiment at oral argument, contending that "charge entrapment" is a more accurate description for the defense because Webb is arguing that the defense would apply to the quantity element of his trafficking charge. We agree with the State's assertion and will therefore refer to the affirmative defense as "charge entrapment."

On appeal, Webb argues that this Court should extend Idaho's traditional entrapment defense to permit a charge entrapment defense in drug trafficking cases. Webb primarily supports his argument with citations to federal and state court decisions that have adopted charge entrapment as a defense. He also argues that under the U.S. Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. Webb claims he should be permitted to present a charge entrapment defense to negate the quantity element of a drug offense.

In response, the State first argues that the district court lacked authority to create a charge entrapment affirmative defense. Next, the State contends that allowing charge entrapment as a viable defense is a minority position across the federal circuits and the states. The State asserts that the federal courts that have adopted the defense have done so in response to the Federal Sentencing Guidelines that permitted downward sentencing departures in reverse sting cases.[1] The State therefore argues that the federal courts' rationale for adopting the defense of charge entrapment

---

[1] Reverse sting operations are when an undercover government agent *sells* contraband to an unsuspecting buyer. *Reverse sting*, Black's Law Dictionary (12th ed. 2024). In contrast, a sting operation involves an undercover government agent who *buys* contraband from an unsuspecting seller. *Id.*, *see also Sting*, Black's Law Dictionary (12th ed. 2024).

4

does not apply to Idaho's mandatory minimum sentencing laws. The State suggests that, if this Court were inclined to recognize a charge entrapment defense, we should only do so in a reverse sting operation case, which is not what occurred here. Lastly, the State asserts that, if we recognize charge entrapment as a defense, Webb should be required to make an offer of proof that establishes evidence supporting the elements of charge entrapment before he is permitted to argue the defense to a jury.

For the reasons discussed below, we decline to recognize the defense of charge entrapment in this case.

## A. The district court had authority to grant the relief requested.

The State initially argues that the district court lacked authority to recognize a charge entrapment defense because the defense was not created by statute and is not rooted in the common law or recognized by Idaho courts. Webb replies that he is not seeking the creation of a new defense, but instead is merely seeking an extension of the recognized defense of entrapment to the quantity of drugs element of drug trafficking cases. The district court concluded that the defense of entrapment was grounded in the common law and was not created by the legislature, so it was within the district court's authority to determine whether to recognize charge entrapment as an affirmative defense.

We agree with the district court. As discussed below, entrapment is an affirmative defense grounded in American common law and recognized in Idaho for over 100 years. *See State v. Mantis*, 32 Idaho 724, 727–28, 187 P. 268, 268–69 (1920) (applying the entrapment defense for the first time in Idaho). "The common law is not immutable" but is "a flexible legal system capable of expansion and change necessary to meet new and changed problems and conditions, or to meet a new or altered public policy evolving from such changed conditions in an expanding and developing social order." *Good v. Good*, 79 Idaho 119, 124, 311 P.2d 756, 758–59 (1957). The common law is judge-made law. *See common law*, Black's Law Dictionary (12th ed. 2024); *see also J. I. Case Co. v. McDonald*, 76 Idaho 223, 230, 280 P.2d 1070, 1073–74 (1955). "In Idaho the common law is the rule of decision in cases not otherwise provided for by statute." *State v. Lawrence*, 98 Idaho 399, 400, 565 P.2d 989, 990 (1977) (citing I.C. § 73-116).

"As established by the Idaho Constitution, Idaho's district courts are courts of general jurisdiction" and generally have subject matter jurisdiction to hear almost all cases and arguments arising under state law. *Allen v. Campbell*, 169 Idaho 613, 618, 499 P.3d 1103, 1108 (2021) (citing

Idaho Const. art. V, § 20; remaining citations omitted). Our preservation rules require that to preserve an issue for appeal, generally, it must first be presented to the trial court. *State v. Hoskins*, 165 Idaho 217, 225, 443 P.3d 231, 239 (2019) (citing *State v. Gonzalez*, 165 Idaho 95, 99, 439 P.3d 1267, 1271 (2019)). Given the district court's general jurisdiction, the fact that common law is not immutable, and that our preservation rules required Webb to present his argument to the district court in order to preserve the issue for appeal, we hold that the district court had authority to grant Webb's requested relief and did not err by entertaining Webb's motion.

**B. We decline to recognize charge entrapment in this case.**

*1. We decline to join the other jurisdictions that recognize charge entrapment because Idaho's policy rationale underlying traditional entrapment does not extend to charge entrapment.*

To determine whether we should extend the defense of entrapment to the quantity element of drug trafficking cases, we begin by examining the common law origins of the entrapment defense. "Entrapment occurs when an otherwise innocent person, not inclined to commit a criminal offense, is induced to do so by a government agent who, desiring grounds for prosecution, originates the criminal design and implants in the mind of the innocent person the disposition to commit the alleged offense." *State v. Cartwright*, 168 Idaho 802, 812, 487 P.3d 737, 747 (2021) (alterations omitted) (quoting *State v. Canelo*, 129 Idaho 386, 391–92, 924 P.2d 1230, 1235–36 (Ct. App. 1996)). "There is a distinction between originating the idea for an offense and merely furnishing the opportunity to commit it. The latter is not entrapment; rather, it is a legitimate method of ferreting out crime." *Id.* (citations omitted).

Nearly every American jurisdiction, including Idaho, now recognizes some form of the entrapment defense. Paul H. Robinson, 2 *Crim. L. Def.* § 209 (Jun. 2024 update). However, entrapment was not a defense at English common law, but instead was created by American courts in the early twentieth century as a reaction to fears that increasing sophistication on the part of police would result in innocent citizens being entrapped into committing crimes. F. Lee Bailey & Kenneth J. Fishman, 1 *Criminal Trial Techniques* § 34:5 (Aug. 2024 update) ("The defense of entrapment was not known at [English] common law, and for many years was not recognized in some states."); Lily N. Katz, *Tailoring Entrapment to the Adolescent Mind*, 18 U.C. Davis J. Juv. L. & Pol'y 94, 102–03 (2014) ("Few other countries besides the United States recognize the entrapment doctrine. . . . [B]y the middle of the twentieth century, the entrapment defense had taken root in American jurisprudence through state common law."). The entrapment defense was

6

a reaction to sophisticated undercover sting operations by government agents. *See* John D. Lombardo, *Causation and "Objective" Entrapment: Toward A Culpability-Centered Approach*, 43 UCLA L. Rev. 209, 219–21 (1995); *see also* Erich Weyand, *Entrapment: From Sorrells to Jacobson—The Development Continues*, 20 Ohio N. Univ. L. Rev. 294 (1993) ("Entrapment is a relatively recent phenomenon which was created by the courts in response to the increased use of undercover 'sting' operations by police and other agencies. Judges have become concerned with the potential result that innocent individuals may be wrongly accused and convicted." (footnotes omitted)).

Federal law traces the entrapment defense back to the Ninth Circuit case of *Woo Wai v. United States*, 223 F. 412 (9th Cir. 1915), in which federal agents lured the defendant into committing an immigration violation. Katz, *supra*, 18 U.C. Davis J. Juv. L. & Pol'y at 104. Most federal circuits followed the Ninth Circuit in adopting the entrapment defense. *Id*. "Seventeen years later in *Sorrells v. United States*, the U.S. Supreme Court finally issued an authoritative statement on the entrapment defense, which today serves as the standard in every federal and a majority of state jurisdictions." Lombardo, *supra*, 43 UCLA L. Rev. at 222 (footnote omitted).

In *Sorrells*, which took place during the Prohibition era, the defendant claimed that a federal agent had entrapped him into procuring a half gallon of liquor. *Sorrells v. United States*, 287 U.S. 435, 438–40 (1932). As an issue of first impression, the U.S. Supreme Court unanimously held that it was error for the lower court to refuse instruction on the defense of entrapment. *Id*. at 452. However, the Supreme Court split on the rationale for adopting the defense. The majority adopted a subjective test with the stated purpose of protecting innocent people from being induced to commit crime. *Id*. Justice Roberts concurred but grounded the doctrine in an objective test with the stated purpose to govern police conduct. *Id*. at 458–59 (Roberts, J., concurring in part). The differing rationales marked a lasting bifurcation in entrapment jurisprudence, and federal and state courts split on which rationale to apply when adopting the defense. Joseph A. Colquitt, *Rethinking Entrapment*, 41 Am. Crim. L. Rev. 1389, 1394–96, 1399 (2004); *see also* Katz, *supra*, 18 U.C. Davis J. Juv. L. & Pol'y at 106.

By the middle of the twentieth century, most states had recognized entrapment as a viable defense via state common law or statute. Katz, *supra*, 18 U.C. Davis J. Juv. L. & Pol'y at 102–03. This includes Idaho, which first applied the defense in 1920 in *Mantis*, 32 Idaho at 727–28, 187 P. at 268. In *Mantis*, this Court reversed Mantis' conviction for "attempting to induce a female to

reside with him for immoral purposes" after concluding that the prosecuting attorney and a woman entrapped Mantis into committing the crime. *Id*. at 726, 187 P. at 268. Since *Mantis*, Idaho appellate courts have continued to recognize the defense. *See Cartwright*, 168 Idaho at 812, 487 P.3d at 747; *State v. Mata*, 106 Idaho 184, 186, 677 P.2d 497, 499 (Ct. App. 1984).

While this Court has never explicitly adopted either the subjective test or the objective test when applying the entrapment defense, our caselaw reflects the use of the subjective test with the underlying purpose of protecting innocent people from being induced to commit crime. *See State v. Koller*, 122 Idaho 409, 411, 835 P.2d 644, 646 (1992) ("Entrapment occurs when *an otherwise innocent person*, not inclined to commit a criminal offense, is induced to do so by a State agent who, desiring grounds for prosecution, *originates the criminal design and implants in the mind of the innocent person the disposition to commit the alleged offense*." (first emphasis added, internal quotation marks and citation omitted)); *State v. Barton*, 154 Idaho 289, 292, 297 P.3d 252, 255 (2013) (applying a subjective test to an entrapment defense); *Mata*, 106 Idaho at 186, 677 P.2d at 499 ("The Idaho Supreme Court has not yet examined, in a majority opinion, the comparative merits of the subjective and objective tests of entrapment. . . . Implicitly, then, the [C]ourt to date has employed the subjective test of entrapment."); *Suits v. State*, 143 Idaho 160, 163 n.1, 139 P.3d 762, 765 n.1 (Ct. App. 2006) (contrasting the subjective test used in Idaho with the objective test used in California).

Understanding the underpinnings of Idaho's traditional entrapment defense, we now turn to the defense of "charge entrapment" advanced by Webb. Webb admits that he intended to deliver methamphetamine to the undercover officer but argues that he was not intending to deliver more than 28 grams. As a result, Webb asserts that he should be permitted to argue to the jury that he should only be found guilty of the lesser included offense of delivery of methamphetamine. *See* I.C. § 37-2732(a)(1)(A).

Charge entrapment has been recognized in several federal circuits and a small minority of states. In *United States v. Staufer*, the Ninth Circuit explained the emergence of charge entrapment in reaction to the Federal Sentencing Guidelines:

> [T]he sentencing guidelines are causing courts nationwide to rethink the long-established rule of entrapment. Prior to the enactment of the [Federal Sentencing] Guidelines, the only discretion delegated to law enforcement agencies was over whom to investigate and prosecute, and courts could adequately prevent government abuse by ensuring that only defendants with a criminal predisposition were being targeted. By exercising their discretion in sentencing, moreover, courts

were able to ensure that defendants' prison terms did not exceed their culpability. Now that our sentencing scheme has moved from a discretionary process to a determinate system based on the weight of the drugs involved in a transaction, the entrapment doctrine designed for the previous system no longer adequately protects against government abuse nor ensures that defendants will be sentenced on the basis of the extent of their culpability. Under the present sentencing scheme, government abuse can be discouraged and corrected only if courts also are able to ensure that the government has some reason to believe that defendants are predisposed to engage in a drug deal of the magnitude for which they are prosecuted. Furthermore, courts can ensure that the sentences imposed reflect the defendants' degree of culpability only if they are able to reduce the sentences of defendants who are not predisposed to engage in deals as large as those induced by the government.

38 F.3d 1103, 1106–07 (9th Cir. 1994) (quotation marks, internal citations, and emphasis omitted).

As a result of strict sentences prescribed in the guidelines, the federal circuits began to split in the early 1990s over the issue of whether charge entrapment could provide a basis for a downward departure from the sentencing guidelines. *Compare United States v. Connell*, 960 F.2d 191, 196 (1st Cir. 1992) (holding that a charge entrapment theory may allow for a downward departure from the guidelines), *and United States v. Barth*, 990 F.2d 422, 424–25 (8th Cir. 1993) (holding that charge entrapment defense was permitted), *with United States v. Williams*, 954 F.2d 668, 673 (11th Cir. 1992) (concluding that charge entrapment was not a viable defense).

In 1993, the U.S. Sentencing Commission amended the Federal Sentencing Guidelines to provide that judges could permit a downward departure in reverse sting operations when "the government agent set a price for the controlled substance that was substantially below the market value of the controlled substance, thereby leading to the defendant's purchase of a significantly greater quantity of the controlled substance . . . ." *Staufer*, 38 F.3d at 1107 (quoting U.S. Sent'g Guidelines Manual § 2D1.1 cmt. n.17, as amended by Amendment 486 (U.S. Sent'g Comm'n 1993)). Since the emergence of the charge entrapment defense, the federal circuits and the states have split on whether to recognize charge entrapment as a viable defense.

Currently, four federal circuits expressly recognize the affirmative defense of charge entrapment. *See id.* at 1108; *United States v. McKeever*, 824 F.3d 1113, 1123 (D.C. Cir. 2016); *United States v. Woods*, 210 F.3d 70, 75 (1st Cir. 2000); *Barth*, 990 F.2d at 424–25. Because the Federal Sentencing Guidelines use a determinate system to calculate sentences based on the weight of the drugs involved in a transaction, the First, Eighth, and Ninth circuits first adopted the defense to protect against potential government abuse and ensure that defendants were sentenced on the basis of the extent of their culpability. *Connell*, 960 F.2d at 194; *Barth*, 990 F.2d at 424–25;

9

*Staufer*, 38 F.3d at 1108. After the U.S. Supreme Court held in *United States v. Booker* that the Federal Sentencing Guidelines were only advisory, the D.C. Circuit held that federal courts were required to consider any mitigating factors, including charge entrapment, related to sentencing. *McKeeve*r, 824 F.3d at 1123 (citing *United States v. Booker*, 543 U.S. 220 (2005)).

In contrast, eight federal circuits have declined to recognize the defense. *See United States v. Gomez*, 103 F.3d 249, 256 (2d Cir. 1997); *United States v. Baird*, No. 20-2262, 2021 WL 3612161, at *2 (3d Cir. Aug. 16, 2021); *United States v. Young*, 818 F. App'x 185, 195–96 (4th Cir. 2020) (unpublished); *United States v. Jones*, 664 F.3d 966, 984 (5th Cir. 2011); *United States v. Brown*, No. 95-6683, 1997 WL 159372, at *3 (6th Cir. 1997) (unpublished); *United States v. Blitch*, 773 F.3d 837, 848 (7th Cir. 2014), *United States v. Lacey*, 86 F.3d 956, 963–66 (10th Cir. 1996); *United States v. Falcon San-Martin*, No. 23-12682, 2024 WL 2182101, at *3 (11th Cir. May 15, 2024). The reasoning for not adopting the defense varies. Some circuits have not recognized the defense because the facts of the cases presented do not lend themselves to a charge entrapment defense *See Baird*, 2021 WL 3612161, at *2; *Brown*, 1997 WL 159372, at *3; *Gomez*, 103 F.3d at 256. Other circuits declined to recognize the defense but viewed the argument invoking the defense as a request for a downward departure under the Federal Sentencing Guidelines or a factor to be considered at sentencing. *See Young*, 818 F. App'x at 195–96; *Blitch*, 773 F.3d at 848. Still others have stated they would consider an entrapment defense for "overbearing and outrageous conduct" by the government but had not found that factual scenario yet. *See Jones*, 664 F.3d at 984; *Lacey*, 86 F.3d at 963–66. Finally, one circuit recognized "sentencing manipulation" as a potential means for sentencing reduction but did not allow for charge entrapment as a standalone defense. *Falcon San-Martin*, 2024 WL 2182101, at *3.

Turning now to state law, only three states have recognized a charge entrapment defense. *See State v. Foster*, 592 S.E.2d 259, 263–64 (N.C. Ct. App. 2004); *Leech v. State*, 66 P.3d 987, 989–90 (Okla. Crim. App. 2003); *Commonwealth v. Petzold*, 701 A.2d 1363, 1366 (Pa. Super. Ct. 1997). However, these states have limited the availability of the defense to cases involving reverse sting operations. *See Foster*, 592 S.E.2d at 263 (recognizing a charge entrapment defense in reverse sting operation in which defendant unknowingly purchased a greater quantity of cocaine); *Leech*, 66 P.3d at 989–90 (recognizing a charge entrapment defense in reverse sting operation); *Soriano v. State*, 248 P.3d 381, 397 (Okla. Crim. App. 2011) (concluding that, although Oklahoma recognized charge entrapment, the defendant was not entitled to charge entrapment jury

instructions in a standard sting operation because the evidence showed that the defendant was predisposed to commit a trafficking offense); *Petzold*, 701 A.2d at 1366 (recognizing a charge entrapment defense in a reverse sting operation); *Commonwealth v. Adams*, 760 A.2d 33, 40 (Pa. Super. Ct. 2000) (concluding that charge entrapment jury instructions were not appropriate under the facts of the case, which involved a standard sting operation); *Commonwealth v. Paul*, 925 A.2d 825, 831 (Pa. Super. Ct. 2007) (reversing the trial court's conclusion that charge entrapment occurred in a standard sting operation); *Commonwealth v. Kittrell*, 19 A.3d 532, 539–40 (Pa. Super. Ct. 2011) (concluding that charge entrapment jury instructions were not appropriate under the facts of the case, which involved a standard sting operation).

In contrast, at least eighteen states have declined to adopt the defense. *State v. Covington*, No. A-1788-18, 2021 WL 4888450, at *6 (N.J. Super. Ct. App. Div. Oct. 20, 2021) (unpublished); *State v. Miller*, 422 P.3d 327, 334 (Or. Ct. App. 2018); *Nadon v. State*, 367 P.3d 803 (Nev. 2010) (unpublished table decision); *McClarin v. State*, 924 N.E.2d 227, 2010 WL 933944, at *4 (Ind. Ct. App. 2010) (unpublished table decision); *Commonwealth v. Saletino*, 871 N.E.2d 455, 461 (Mass. 2007); *Ford v. State*, 257 S.W.3d 560, 563 (Ark. Ct. App. 2007); *State v. Alderman*, 2006 WI App 20, ¶ 5, 289 Wis. 2d 218, 709 N.W.2d 111 (Ct. App. 2005) (unpublished table decision); *State v. Reno*, No. 04CA2759, 2005 WL 674455, at *2–3 (Ohio Ct. App. Mar. 14, 2005) (unpublished); *People v. Claypool*, 684 N.W.2d 278, 283–84 (Mich. 2004), *abrogated on other grounds by People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015)); *State v. Monaco*, 83 P.3d 553, 557 (Ariz. Ct. App. 2004); *People v. Smith*, 80 P.3d 662, 667 (Cal. 2003); *Kelley v. State*, 821 So. 2d 1255, 1257 (Fla. Dist. Ct. App. 2002); *State v. Blackmon*, 78 S.W.3d 322, 331 (Tenn. Crim. App. 2001); *State v. Phillips*, Nos. 0-092, 99-444, 2000 WL 328074, at *2 (Iowa Ct. App. Mar. 29, 2000) (unpublished); *State v. Yip*, 987 P.2d 996, 1010–11 (Haw. Ct. App. 1999); *Watrous v. State*, No. 14-96-00853-CR, 1999 WL 93180, at *4 (Tex. App. Feb. 25, 1999) (unpublished); *State v. Hardy*, 715 So. 2d 466, 472 (La. Ct. App. 1998); *State v. Soto*, 562 N.W.2d 299, 305 (Minn. 1997).

As with the federal circuits, the reasoning for declining to adopt charge entrapment differs among the states. Some have declined to recognize the defense simply because their state supreme courts and state legislatures have not recognized the defense. *Covington*, 2021 WL 4888450, at *6; *Ford*, 257 S.W.3d at 563; *Reno*, 2005 WL 674455, at *2–3; *Phillips*, 2000 WL 328074, at *2; *Hardy*, 715 So. 2d at 472; *Blackmon*, 78 S.W.3d at 331; *Watrous*, 1999 WL 93180, at *4; *Alderman*, 2006 WI App 20, ¶ 5. Other states have declined to extend the defense because the

factual scenario presented to the court did not lend itself to charge entrapment. *Yip*, 987 P.2d at 1010–11; *McClarin*, 2010 WL 933944, at \*4; *Hardy*, 715 So. 2d at 472; *Saletino*, 871 N.E.2d at 461; *Soto*, 562 N.W.2d at 305. California declined to adopt the defense because California applies the objective test to the entrapment defense, while "[t]he federal doctrine of [charge] entrapment . . . focuses on the intent of the defendant and is subjective." *Smith*, 80 P.3d at 667. Lastly, some state courts have declined to adopt the charge entrapment defense because they concluded it would infringe on the legislature's authority to set a statutory sentencing range for crimes. *See Monaco*, 83 P.3d at 557; *Phillips*, 2000 WL 328074, at \*2; *Ford*, 257 S.W.3d at 563; *Kelley*, 821 So. 2d at 1257.

After considering these decisions and the common law origins and rationale underlying Idaho's traditional entrapment defense, we decline to recognize the charge entrapment defense in this case. The common law origins of entrapment were twofold—to protect innocent people from being induced to commit crime and to discourage police misconduct. As discussed above, this Court adopted the entrapment defense in line with the majority in *Sorrells*—with the stated purpose of protecting innocent people from being induced to commit a crime. *See Sorrells v. United States*, 287 U.S. 435, 452 (1932); *State v. Koller*, 122 Idaho 409, 411, 835 P.2d 644, 646 (1992); *State v. Barton*, 154 Idaho 289, 292, 297 P.3d 252, 255 (2013). This is reflected in Idaho's criminal jury instruction on the entrapment defense, which states that entrapment occurred if (1) "[t]he idea for committing the crime came from an agent of the State and not from the defendant"; (2) "[t]he state agent(s) then persuaded or talked the defendant into committing the crime"; and (3) "[t]he *defendant was not ready and willing to commit the crime* before the law enforcement officials spoke with the defendant." I.C.J.I. 1513 (emphasis added). This is also reflected in our caselaw, which defines entrapment as "when an otherwise *innocent person*, not inclined to commit a criminal offense, is induced to do so by a government agent who, desiring grounds for prosecution, originates the criminal design and *implants in the mind of the innocent person* the disposition to commit the alleged offense." *State v. Cartwright*, 168 Idaho 802, 812, 487 P.3d 737, 747 (2021) (emphasis added) (quoting *State v. Canelo*, 129 Idaho 386, 391–92, 924 P.2d 1230, 1235–36 (Ct. App. 1996)).

The rationale underlying our adoption of the traditional entrapment defense does not apply to the facts of Webb's case. Here, Webb was not an "otherwise innocent person, not inclined to commit a criminal offense" who was induced to commit a crime by government agents. Webb's

argument does not implicate the policy rationale underlying the traditional entrapment defense—to protect an otherwise innocent person, not inclined to commit a criminal offense, from being induced to commit a crime by government agents. "There is a distinction between originating the idea for an offense and merely furnishing the opportunity to commit it. The latter is not entrapment; rather, it is a legitimate method of ferreting out crime." *Id*. at 812, 487 P.3d at 747 (citations omitted). The rationale behind the entrapment defense does not apply to Webb's case because providing Webb an opportunity to sell more methamphetamine is not entrapment; it is "a legitimate method of ferreting out crime." *Id*.

We next conclude that the rationale applied by the federal circuits and states that have adopted charge entrapment does not apply here. To the extent that Webb cites federal caselaw in support of his argument, that caselaw is based on the Federal Sentencing Guidelines. We agree with the district court that our mandatory minimum sentencing scheme is different than the Federal Sentencing Guidelines employed by the federal courts. The Federal Sentencing Guidelines allow for a "downward departure" for mitigating circumstances, while Idaho's mandatory minimums do not allow for any downward departure. As a result, the federal caselaw recognizing the defense is distinguishable.

Second, Webb's case was not a reverse sting operation like those presented in the state cases recognizing the defense. *See Foster*, 592 S.E.2d at 263–64; *Leech*, 66 P.3d at 989–90; *Petzold*, 701 A.2d at 1366; *Soriano*, 248 P.3d at 397; *Adams*, 760 A.2d at 40; *Paul*, 925 A.2d at 831; *Kittrell*, 19 A.3d 532, 539–40. Illustrative of this point is the North Carolina Court of Appeals case, *Foster*, 592 S.E.2d 259.

In *Foster*, the defendant was involved in a reverse sting operation in which a CI sold more than the agreed-upon quantity of drugs to the defendant, who was unaware that he had received more than the quantity of drugs that he intended to purchase. 592 S.E.2d at 264–65. The defendant intended to purchase only 5 grams of cocaine, a typical amount for a user, but instead was given more than 28 grams during the transaction, resulting in a trafficking charge with an increased sentence. *Id*. The North Carolina Court of Appeals recognized the charge entrapment defense under these facts and ordered a new trial. *Id.* at 265. An equally divided Supreme Court of North Carolina allowed the decision to stand. *State v. Foster*, 604 S.E.2d 913 (2004).

Webb's case is distinguishable because it did not involve a reverse sting operation. In reverse sting operations, the government agent has greater control over the quantity and price of

the contraband delivered to the buyer, and thereby greater control over any possible mandatory sentence dependent on the quantity or price of the contraband. As the *seller* in the sting operation, Webb had direct control over the quantity of drugs transacted.

2. *U.S. Supreme Court precedent does not mandate that Idaho adopt the defense of charge entrapment.*

Lastly, we address Webb's argument that he should be permitted to present a charge entrapment defense to negate the quantity element of a drug offense because under the U.S. Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. Webb argues that this Court should follow the lead of the Ninth Circuit Court of Appeals, which applied the holding from *Apprendi* in *United States v. Cortes* and held that it entitled a defendant to present the charge entrapment defense to negate the quantity element of a drug offense. 757 F.3d 850, 863–64 (9th Cir. 2014).

In *Apprendi*, as recognized by this Court, the U.S. Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *State v. Adkins*, 171 Idaho 254, 256, 519 P.3d 1194, 1196 (2022) (alteration in original) (quoting *Apprendi*, 530 U.S. at 490). Expanding on *Apprendi*, the U.S. Supreme Court concluded in *Alleyne v. United States* that any facts that increase a mandatory minimum sentence must be submitted to the jury. 570 U.S. 99, 103 (2013). Following the U.S. Supreme Court's decisions in *Apprendi* and *Alleyne*, the Ninth Circuit held in *Cortez* that defendants are entitled to present a charge entrapment defense if the defense could result in a lower statutory sentencing range. *Cortes*, 757 F.3d at 861–64.

We are unpersuaded by Webb's argument. The holdings in *Apprendi* and *Alleyne* only require that facts that increase the penalty for a crime be presented to a jury. There is no question that in Webb's case, the State is required to prove, beyond a reasonable doubt, that Webb delivered more than 28 grams of methamphetamine. That is all that is required by *Apprendi* and *Alleyne*. Neither *Apprendi* nor *Alleyne* recognize charge entrapment as a viable defense or require that it be permitted in drug cases.

Similarly, nothing in *Cortes* mandates a different result. While the Ninth Circuit references *Apprendi* and *Alleyne*, it does so against the background of having adopted charge entrapment as a viable defense decades before in reaction to the Federal Sentencing Guidelines. *Id.* at 860–61. The Ninth Circuit was simply extending a previously recognized defense to the quantity element

of a drug trafficking offense because *Apprendi* and *Alleyne* require that that the quantity element of a drug offense be submitted to the jury and found beyond a reasonable doubt. *Id*. at 863.

The circumstances in Idaho are different than those the Ninth Circuit faced in *Cortes*. Idaho has never recognized charge entrapment as a viable defense and does not utilize sentencing guidelines with upward and downward departures. As previously discussed, Idaho's policy rationale underlying the traditional entrapment defense does not apply to charge entrapment. Given these differences, we are not persuaded to adopt the holding in *Cortes*.

In sum, we decline to recognize the defense of charge entrapment in this case. If Webb believes he was entrapped into committing the crime he is accused of, he is free to ask the district court to give the traditional entrapment jury instruction. Having declined to adopt the charge entrapment defense in this case, we do not reach the State's argument that Webb should be required to present a prima facie case of charge entrapment at a pretrial hearing before being allowed to argue the defense.

## V.    CONCLUSION

For the reasons discussed herein, we affirm the district court's decision denying Webb's motion in limine.

Chief Justice BEVAN, and Justices BRODY, MOELLER, and MEYER CONCUR.